[No. 36724.   Department Two.   August 27, 1964.]

RUSSELL NELSON et al., Appellants, v. THE CITY OF SEATTLE et al., Respondents.*

*Reported in 395 P. (2d) 82.

*Hullin, Ehrlichman, Carroll & Roberts,* for appellants.

*A. C. Van Soelen* and *Gordon F. Crandall,* for respondent City of Seattle.

*LeSourd & Patten* and *F. A. LeSourd,* for respondent Seattle Housing Authority.

FINLEY, J.—This is a certiorari proceeding brought to review the validity of rezoning ordinance No. 91078 of the city of Seattle, which will have the effect of permitting the construction of a high-rise housing facility in an area of downtown Seattle previously restricted to buildings no more than 35 feet in height.

The present action represents possibly the closing round of an extensive legal battle waged by the appellants, the owners of three properties abutting the rezoned area, in opposition, direct and indirect, to a specific project proposed by the Seattle Housing Authority. In 1961, the Authority filed with the Seattle City Council an application for approval of a site for a housing project for persons of low income, specifically designed for elderly persons. The project is a 300-unit, 17-story apartment building, to be located bordering the new Seattle freeway at approximately Eighth and James Streets. So located, it would allegedly damage the appellants substantially, destroying business and private parking facilities and the view to the west. The approval of the site by the City Council was required by

the cooperation agreement between the Housing Authority and the city.

The request for approval of the site was referred to the Parks and Public Grounds Committee of the City Council, where a public hearing was held concerning the advisability of the location. At that hearing the appellants presented their objections, including such matters as danger to elderly occupants from the fire hazard in the proposed building, and the possible effect on elderly persons of air pollution, traffic hazards and noise. After the hearing the Committee recommended that the site be approved for an elderly housing project.

At this point appellant Brown sought a writ of prohibition, which was dismissed by the superior court. His appeal to the Supreme Court concerning that writ was dismissed on stipulation, Brown reserving the right to take all appropriate legal steps to prevent effective rezoning of the area to permit the proposed construction. The area in question was at that time zoned "RM" (multiple residence, low density), which restricted the height of buildings to 35 feet. The project was, therefore, not possible of consummation until the area could be rezoned to "RMH" (multiple residence, high density), which would remove the height restrictions and permit the construction of a 17-story unit.

The City Council accepted the recommendation and adopted resolution 18990, approving the site; whereupon, the Housing Authority applied for the rezoning, the granting of which forms the subject matter of the present action. The City Council referred the question of whether the area should be rezoned from "RM" to "RMH" to the City Planning Commission, where public hearings were held and a favorable report returned to the City Council. Receiving the recommendation, the City Council held yet another public hearing on the advisability of the zone change, after which ordinance No. 91078 was passed, changing the zoning of the area to "RMH". The appellants appeared at both public hearings and objected to the proposed rezoning. Although the Planning Commission main-

tained that the only considerations germane to zoning were those of area-wide impact rather than evidence of specific proposed uses, and so prefaced its favorable recommendation to the City Council; nevertheless, the appellants were permitted to introduce extensive testimony (from many witnesses) criticizing the suitability of the project for the elderly. In the hearing before the City Council, oral argument was again received from the appellants, and the written materials filed with the Planning Commission were made available to the members of the Council.

Appellants direct their attack respecting the validity of the rezoning ordinance primarily to the manner in which it was adopted, in that it was not strictly in accordance with existing statutory requirements or procedure. More specifically, they claim that the city lacked jurisdiction to enact or effect the rezoning, because it failed to comply with the mandate of RCW 35.63, which confers certain powers, including zoning, upon any city which "desires to avail itself of the powers conferred by this act." As a prerequisite to the exercise of any of the powers, however, the statute specifies that a city must create a planning commission and adopt a comprehensive zoning plan for the city upon the recommendations of that planning commission. Concerning this mandatory comprehensive plan, RCW 35.63.100 reads, in part:

" . . . A copy of the ordinance or resolution adopting or embodying such plan or any part thereof or any amendment thereto, duly certified as a true copy by the clerk of the municipality, shall be filed with the county auditor. . . ."

The city of Seattle has failed to comply literally with this statutory procedure. No duly adopted plan has been filed with the county auditor. A comprehensive plan for the development of the city, and one which would apparently qualify under the statute, was forwarded to the City Council by the Planning Commission in 1957. The Council approved the proposal "in principle" in its resolution 17488, but did not enact it by ordinance. The plan was filed with

the City Comptroller, and not the county auditor. It is the position of the appellants that RCW 35.63 preempts the field of municipal zoning, provides the only permissible procedural means of accomplishing that zoning, and that the failure of the city to properly adopt and file a comprehensive zoning plan deprives the City Council of the jurisdiction to enact the rezoning ordinance 91078. We are unable to accept this contention.

██ It is undisputed that the city of Seattle had and was exercising the power to zone prior to the enactment of RCW 35.63, pursuant to a direct grant of police power from the state constitution. Article 11, § 11, provides:

"Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

Likewise, prior to the statute, Seattle had the power to establish a planning commission and charge it with the task of securing a comprehensive plan for the city's future growth. *Bussell v. Gill* (1910), 58 Wash. 468, 108 Pac. 1080. Of course, the state legislature could, by general laws in conflict with this pre-existing zoning power or procedure, limit this power or procedure in any way it chose. The question is, therefore, whether or not the legislature intended this statute to have the effect of preempting the field of zoning regulation. As we said in *Ayers v. Tacoma* (1940), 6 Wn. (2d) 545, 108 P. (2d) 348:

"It may be stated as a general rule that a state law will not be construed as impliedly taking away from a first-class city an existing power. In order to accomplish that result, the state statute must be clear and unambiguous. A seeming conflict must be harmonized, if possible. . . ."

It remains to look at the language of the act itself to see whether it appears, in clear and unambiguous language, that the legislature intended to make the act mandatory and not permissive insofar as first class cities are concerned.

It appears that the statute is at least ambiguous as to whether there existed an intent to preempt the pre-existing zoning powers of Seattle. RCW 35.63.020 provides:

"If any council or board desires to avail itself of the powers conferred by this chapter it shall . . . "

Such language is clearly permissive rather than mandatory legislation. See: 35 Wash. L. Rev. 551, 552. Seattle took no action to avail itself of the powers conferred in this act, never expressly purporting to act pursuant to it, and purposely ignoring the filing requirements set out in the act. Seattle did no more than continue to operate under the powers existing prior to the statute.

Nor do we consider our decision in *Lauterbach v. Centralia* (1956), 49 Wn. (2d) 550, 304 P. (2d) 656, as dictating a contrary conclusion. In that case we held that the city of Centralia, after having expressly acted pursuant to RCW 35.63, thereafter had to abide by the terms of the act. It was there unnecessary to decide the effect of a failure to act pursuant to the statute.

The appellant points to certain language in the act which might be interpreted as requiring first class cities such as Seattle to zone only in accordance with the procedure set down by the act. When the statute is read in its entirety, however, its over-all import is unclear. Recognizing that this is a field which may be occupied by a first class city, when not in conflict with state law, we are unable to hold that it sufficiently appears that the intent of the legislature was to preempt the field. The ambiguities in the act make such a determination difficult, and the presumption against preemption must prevail in the absence of a clearer statement of policy by the legislature.

We are buttressed in this conclusion, not only by the practical difficulties undoubtedly envisioned by the legislature in requiring the overhaul of the pre-existing zoning in Seattle, but also by the status of zoning powers at the time the act was first adopted in 1935. While the power of charter cities to zone was established, this court had consistently held that the powers of other cities and counties were to be narrowly construed. The doubts as to the power of such municipal units to zone were expressly disposed of by the enactment of RCW 35.63. Conversely, in the face of the established power of charter cities to zone,

the legislature did not see fit to expressly take away or limit their power. Had such a result been intended, it could have easily been stated.

We hold that the enactment of RCW 35.63 did not preempt the field of municipal zoning to the extent that the pertinent action of the Seattle City Council was voided by the previous failure to file a comprehensive zoning plan with the county auditor.

We likewise find no merit to the contention that the City Council acted arbitrarily and capriciously in rezoning the area. Appellants base this contention on the fact that statements by the planning commission and the City Council indicated that the primary consideration in rezoning was the over-all growth of the area in terms of all possible uses under "RMH" zoning. Coupled with this position, however, is the fact that both entities permitted the introduction of extensive evidence and argument concerning the one proposed use for which the rezoning had been initiated. We are unable to hold that either entity acted arbitrarily in the emphasis which was accorded the specific proposed use in relation to the all-over considerations of the area. In this respect we also note the extensive hearings, in which the appellants participated, directed to the sole question of the advisability of the project for the elderly. Appellants were also heard before the City Council in that round.

The judgment of the trial court is affirmed.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

February 2, 1965. Petition for rehearing denied.