[No. 3115–2. Division Two. December 28, 1978.]

JOSEPH P. MENTOR, *Appellant,* v. KITSAP COUNTY, ET AL, *Respondents.*

*Philip M. Best,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* for respondent.

PETRIE, J.—Respondent Larry Larson obtained permission from the Kitsap County Board of Commissioners to develop certain property in Silverdale, Washington. Petitioners, Joseph P. Mentor and Fred Hill, who own nearby lots, were displeased with the board's decision and sought review in Superior Court. They now appeal to this court from judgment entered in Superior Court approving the board's actions. By stipulation, petitioner Hill has been

dismissed from the appeal. For facility of discussion of the issues, however, we choose to continue reference to both petitioners at trial as the appellants. We affirm.

In late 1976, Larson, the owner of beachfront property in Silverdale, applied for a planned unit development permit (PUD) for a hotel facility; the plans included construction of a bulkhead along the beach. He also sought a rezone of the area. Both requests received affirmative recommendations from the Kitsap County Planning Commission. After the board approved the plans, petitioners obtained a writ of review challenging that decision. The matter was set for trial on June 20, 1977.

Meanwhile, Larson became aware that his 1976 application might, indeed, have been defective. He submitted a letter seeking reapproval of his plans and was informed by James Tracy, the Kitsap County Planning Director, that the letter would be sufficient to initiate a second proceeding. He was also told that the information would be incorporated into the second file. The first of several hearings was held by the commission in March 1977. On May 5, Larson resubmitted the requests for reapproval using the forms generally employed by the planning department. On May 31, the rezone and PUD were unanimously approved by the commission.

In order to avoid the need to try this matter twice, the parties stipulated that the challenge of the first approvals would be consolidated with any court challenge to the second proceeding. The first case was stayed pending resolution of the issues. On June 27, the board heard arguments concerning Larson's request and also discussed the adequacy of the environmental impact statement (EIS) submitted in this matter. Thereafter, orders conditionally approving the rezone and the PUD were issued and petitioners timely obtained a writ of review in Superior Court challenging the second approvals. This appeal follows judgment in favor of Larson and the board.

Petitioners' assignments of error can be grouped into two clusters—dissatisfaction with the planning department's

procedure, and a challenge to the adequacy of the EIS. We discuss first the procedural aspect of this case.

■ Petitioners maintain that the planning commission exceeded its authority by treating Larson's letter as a petition. There is no doubt that the letter of reapplication did not meet the formal requirements adopted by the planning agency pursuant to Kitsap County zoning ordinance No. 5.8.1.[1] An agency, however, may relax or modify its procedural rules when justice so requires. Such an action is reviewable only upon a showing of substantial prejudice to the complaining party. *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 25 L. Ed. 2d 547, 90 S. Ct. 1288 (1970); *NLRB v. Monsanto Chem. Co.*, 205 F.2d 763 (8th Cir. 1953). We find that the agency did not abuse its discretion by permitting Larson's letter to be used as a petition.

■ Three of petitioners' procedural arguments (admissibility of the transcript of an earlier contempt proceeding, preclusion of inconsistent positions, and estoppel) are attempts to "prove" that the reapplication was actually a separate action. All parties agree that the reapplication was a new action. Accordingly, we see no benefit in discussing these procedural arguments in detail. Although not completely clear, it appears that the three arguments were intended to buttress petitioners' belief that the commission acted improperly in supplementing the second application with materials submitted in support of the earlier request. As a general rule, an agency may base its decision on information gathered from other files or from independent investigations *if such other material is introduced into evidence in the subsequent proceeding. State ex rel. Country Club v. Department of Pub. Serv.*, 198 Wash. 37, 86 P.2d 1104 (1939); Annot., 18 A.L.R.2d 552, § 11 (1951). In the case at bench, the Board of County Commissioners

---

[1]Ordinance No. 5.8.1 states in part:

"The Planning Agency shall in its rules, prescribe the form and scope of all petitions, applications and appeals provided for in this Ordinance . . ."

had before it all the information previously compiled by the Planning Commission. We find no merit in petitioners' contentions.

■ We discuss next the substance of this appeal. Was Larson's environmental impact statement adequate? RCW 43.21C.030(2)(c) requires that an EIS be prepared whenever "major actions significantly affecting the quality of the environment," is under consideration. Courts review the EIS to determine whether the environmental effects of the proposed action are disclosed, discussed, and substantiated by opinion and data. *Ullock v. Bremerton*, 17 Wn. App. 573, 565 P.2d 1179 (1977). The adequacy of an EIS is judged by the "rule of reason," however, and we need not concern ourselves with the remote and speculative consequences of the proposed action. *Cheney v. Mountlake Terrace*, 87 Wn.2d 338, 552 P.2d 184 (1976). Although the question of the adequacy of an EIS is one of law, *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 525 P.2d 774 (1974), the decision of the agency relative to the adequacy of an EIS is "accorded substantial weight." RCW 43.21C.090.

Petitioners first claim that the EIS does not contain sufficient information concerning the environmental consequences of constructing a bulkhead along the beachfront of the property. We disagree. The statement does briefly discuss the potential long–term effects of the bulkhead. Furthermore, it points out that a substantial development permit pursuant to the provisions of RCW 90.58—the Shoreline Management Act of 1971—must be obtained before commencing bulkhead construction.[2] We find that the EIS does meet the requirements of WAC 197–10–060(4), which provides:

> Proposals involving extensive future actions may be divided, at the option of the lead agency, into segments

---

[2]An EIS specifically discussing the impact of the bulkhead will undoubtedly be required in conjunction with the Shoreline Management Act proceeding. *Eastlake Community Council v. Roanoke Assocs., Inc.*, 82 Wn.2d 475, 513 P.2d

with an EIS prepared for each segment. In such event, the earlier EIS shall describe the later segments of the proposal and note that future environmental analysis will be required for these future segments.

Petitioners also complain that the statement is faulty because it does not discuss the potential problem of hotel visitors trespassing on their property. We find that the merits of petitioners' arguments are, at best, dubious and are convinced that they are merely an attempt to "fly speck" the statement. *Lathan v. Brinegar,* 506 F.2d 677 (9th Cir. 1974).

Petitioner Hill, who operates a cement processing plant on his property, is concerned because the statement does not discuss the possibility that he will be forced to relocate because hotel patrons might be disturbed by the noise of his factory. This is a "remote and speculative" consequence, not appropriate for inclusion in an EIS. *Cheney v. Mountlake Terrace, supra.*

Finally, petitioners assert that the EIS is insufficient because it fails to adequately discuss the requirements of the Silverdale Urban Design Study—the comprehensive land use plan covering the area in which Larson's property is located. WAC 197–10–440(6)(f) does require that an EIS contain a description of existing comprehensive land use plans and a discussion of how the proposed action relates to such plans.

Petitioners correctly point out that the EIS does not discuss the fact that part of the planned facility is in an area designated as "open space" in the urban design study. The record clearly indicates that an open–space designation does not prohibit development if the board determines that such usage is in the public interest. Apparently, the board was so convinced in this case. The failure of the EIS to discuss the ramifications of the open–space designation is

---

36, 76 A.L.R.3d 360 (1973) (building permit as triggering SEPA—State Environmental Policy Act of 1971—requirements). *See also* Crooks, *The Washington Shoreline Management Act of 1971,* 49 Wash. L. Rev. 423, 450 (1974).

unfortunate but not fatal. We do not find that this problem, by itself, requires us to hold the statement inadequate.

Petitioners also argue that the EIS does not meet the requirements of WAC 197–10–440(6)(f) because it improperly indicates that the facility is located in a medium density residential zone. At the time the draft statement was prepared the area was designated as medium density, but before the final statement was submitted, the comprehensive plan had been modified to include the area within an urban use classification. Because the change to an urban use classification *increased* the permissible density of the area, it does not appear that this error in the EIS in any way misled the board concerning the environmental consequences of approving the PUD and rezone.

Although we find no serious inadequacies in the statement submitted here, we feel compelled to emphasize that an environmental impact statement should not merely be an ex post facto justification of official action but should serve to inform lawmakers of the environmental consequences of the proposal before them. *Life of the Land v. Brinegar*, 485 F.2d 460 (9th Cir. 1973). These two inconsequential errors in the EIS involved in this case do not indicate that the county has in any way abdicated its important role in implementing the environmental policy of this state, and we are satisfied that the statement adequately discusses the possible environmental consequences of the proposed facility.

Judgment affirmed.

PEARSON, C.J., and SOULE, J., concur.