[Nos. 45787, 45788. En Banc. July 10, 1980.]

JAMES BARRIE, ET AL, *Appellants,* v. KITSAP COUNTY, ET AL, *Respondents.*

*Derrill T. Bastian* and *Helsell, Fetterman, Martin, Todd & Hokanson,* by *David F. Jurca* and *Donald C. Harrison,* for appellants.

*C. Danny Clem, Prosecuting Attorney,* and *W. Daniel Phillips, Deputy,* for respondent Kitsap County.

*Hillis, Phillips, Cairncross, Clark & Martin, P.S.,* by *Richard R. Wilson* and *Smith, Redman & O'Hare,* by *Thomas C. O'Hare,* for respondents Ross.

WRIGHT, J.—This is a direct appeal of judgments for defendants in review, on writs of certiorari, of Kitsap County's rezone, and the City of Bremerton's pre-annexation comprehensive plan adoption and simultaneous zoning, both of which allow shopping center construction. Plaintiffs–appellants raise several issues, including alleged nonconformity of the zoning with the comprehensive plans

and purported inadequacy of the environmental impact statements.

The cases are consolidated. James and Sheila Barrie, husband and wife, brought one action to obtain judicial review of the Kitsap County Board of County Commissioners' (board) June 13, 1977, rezoning of a 38–acre tract from RS–7500 (single–family residential) to B–G (business–general).

In the other case, the Barries, together with Ed Bremer, a downtown Bremerton businessman, and Bremerton Tomorrow, a nonprofit business organization, sought judicial review of an action taken by the City of Bremerton March 30, 1977. In that action, the city council simultaneously adopted a comprehensive plan covering, and zoned, a 74–acre area. The subject area includes a 54–acre tract zoned for business development which encompasses the 38–acre tract involved in the county action. The comprehensive plan adoption and zoning take effect if and when the City annexes the tract. See RCW 35.13.177–.178.

The land in question is owned by defendants–respondents Ross, who applied for the county rezone and city preannexation zoning in order to develop a 400,000–square–foot regional retail shopping center. The Ross property lies in unincorporated Kitsap County, just north of Bremerton in an area known as Clares Marsh. The property directly across Wheaton Way, the parcel's eastern boundary, is within city limits.

The Barries own a neighboring 10–acre tract of land which they wish to protect from the adverse effects of the shopping center. They have lived on their property since 1952. In 1961 they remodeled and extensively landscaped their home in reliance on provisions in the comprehensive plan stating that the entire area was and would remain residential in nature. Much of the area abutting Wheaton Way, however, is now commercial.

The Barries operate their property as a conservation farm that is recognized as a wildlife habitat by the Washington Department of Game and the Kitsap County Soil

and Water Conservation District. Both Ross and the county evidently concede that the rezone and shopping center will have a serious adverse impact on the Barrie property.

The decision of whether to permit shopping center construction on the Ross property has been a major issue in Kitsap County since the early 1970's, and has been before this court once before. *Barrie v. Kitsap County,* 84 Wn.2d 579, 527 P.2d 1377 (1974). At that time, the court reversed the trial court's decision and held the county's rezoning invalid. The reversal was prompted by the insufficiency of notice given by the county planning commission (commission) regarding the rezone hearing and the absence of a verbatim record of the rezone proceedings.

Defendants Ross reportedly purchased the land in question before *Barrie* I. They first applied for the rezone now at issue in 1976.

The actions brought by the Barries against the City and the County, with Mr. and Mrs. Ross named as party defendants in each instance, were tried to the court without a jury. Visiting Judge Chamberlin upheld the City and County decisions in both cases. Plaintiffs appealed. This court granted direct review June 15, 1979.

I

The first issue is: To what extent must county zoning ordinances conform with comprehensive plans under the Planning Enabling Act? The Barries argue that the county's comprehensive plan is a "constitution" which requires zoning in accordance with its provisions. Respondents, Kitsap County and Mr. and Mrs. Ross, respond that the plan is a "blueprint" or "guide" which does not require strict adherence.

Kitsap County plans and zones pursuant to the Planning Enabling Act of the State of Washington, RCW 36.70, which is designed to assure "the highest standards of environment for living." RCW 36.70.010. *Carpenter v. Island County,* 89 Wn.2d 881, 887, 577 P.2d 575 (1978).

RCW 36.70.320 directs the county planning agency (commission) to prepare a comprehensive plan. That plan is defined as a source of reference and policy guide for official regulations and controls. RCW 36.70.020(6)(c) and (d). "Official controls," including zoning ordinances, are "the means of translating into regulations and ordinances . . . the general objectives of the comprehensive plan." RCW 36.70.020(11). RCW 36.70.340 states the comprehensive plan shall not "be considered to be other than . . . a guide to the later development and adoption of official controls."

The commission is to use the plan in reporting on or recommending to the board any proposed projects. The report must indicate how the project does or does not conform to the comprehensive plan. RCW 36.70.450. However, these reports and recommendations are *"advisory only."* (Italics ours.) RCW 36.70.650. *And see* RCW 36.70.540. RCW 36.70.550 provides that the commission may prepare official controls which further the plan's objectives and goals and may also draft regulations to preserve the plan's integrity.

It may be argued that the purpose of the act—assuring the highest standards of environment for living—is defeated when the plan is not strictly followed. However, since planning agency reports and recommendations on proposed projects and controls—which must indicate conformity or nonconformity with the comprehensive plan— are "advisory only" (RCW 36.70.650 and RCW 36.70.540), it is evident the legislature intended that nonconformance with the plan should not necessarily block a project. *South Hill Sewer Dist. v. Pierce County,* 22 Wn. App. 738, 745–46, 591 P.2d 877 (1979). This is confirmed by the admonition that the comprehensive plan shall not be considered other than a guide to development and adoption of official controls. RCW 36.70.340.

Appellants argue that the court should follow Oregon by holding that the plan should be given preference over conflicting ordinances. But Oregon's statutory scheme substantially differs from Washington's.

While this court—like the statute in question—has stated that a comprehensive plan is a "guide" to adoption of zoning regulations (*State ex rel. Standard Mining & Dev. Corp. v. Auburn*, 82 Wn.2d 321, 330, 510 P.2d 647 (1973); *Smith v. Skagit County*, 75 Wn.2d 715, 738–39, 453 P.2d 832 (1969)), it also has characterized it as a "blueprint which suggests various regulatory measures." *Lutz v. Longview*, 83 Wn.2d 566, 574, 520 P.2d 1374 (1974); *Buell v. Bremerton*, 80 Wn.2d 518, 526, 495 P.2d 1358 (1972); *Shelton v. Bellevue*, 73 Wn.2d 28, 35, 435 P.2d 949 (1968). Strict adherence has not been required. *Lutz v. Longview, supra; Buell v. Bremerton, supra.*

## II

The next issue is: Does the Kitsap County Ross rezone sufficiently conform with the county comprehensive plan? The Barries urge that the regional shopping center contemplated by the Ross rezone is in "patent nonconformity" with the county comprehensive plan. Respondents Ross and Kitsap County argue that the rezone is consistent with the plan.

The plan consists of two parts: (1) the original text, adopted by the board in 1967, and (2) the planning policies, adopted in 1970 and amended in 1975. Nearly all of the Barries' objections directed to specific "conflicts" have no merit. The rezone, however, probably violates Business Area Development Policy No. 25. That policy states: "Urban business areas should be located approximately 4 miles apart." The Ross shopping center would be located only 2 1/2 miles from downtown Bremerton. Nonetheless, we hold that the Ross rezone generally conforms with the plan.

## III

The third question is whether the Kitsap County commissioners acted arbitrarily and capriciously in adopting the Ross rezone because it does not completely conform with the comprehensive plan. The Barries contend that where a rezoning does not conform with a comprehensive

plan it is arbitrary and capricious. Arbitrary and capricious conduct is

willful and unreasonable action, without consideration and [in] disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached.

*Buell v. Bremerton, supra* at 526; *Bishop v. Houghton,* 69 Wn.2d 786, 794, 420 P.2d 368 (1966).

In *Buell* this court found that although Bremerton's comprehensive plan did not provide for an enlargement of business zoning, the council's action in doing so was not arbitrary and capricious. Similarly, in *Lutz v. Longview, supra,* the court held that petitioner had not proved the city council had acted arbitrarily or capriciously in approving for an area zoned single–family residential a planned unit development not provided for in the plan.

In the instant case, even though the Ross shopping center does not completely conform with the plan, it is well within the statutory parameters outlined above. There has not been willful and unreasonable action but instead reasoned action following careful consideration of the issue. The county did not act arbitrarily and capriciously by adopting a rezone that does not completely conform with the comprehensive plan.

## IV

The next issue is: Did the Bremerton City Council act arbitrarily and capriciously in enacting a preannexation comprehensive plan and zoning ordinance for the Clares Marsh area?

### A

The Barries first argue that the city council acted arbitrarily and capriciously because the preannexation B–3 zoning for Clares Marsh and the projected use for the Ross shopping center do not conform with the city's comprehensive plan. Appellants argue that the planning commission

and city council actions are in complete nonconformity because they initiated a process that will transfer the city's commercial center outside Bremerton. This is contrary to the plan's major objective of strengthening and preserving the Central Business District (CBD) as Bremerton's commercial center, appellants contend. Respondents Ross argue that there is not a conflict since the plan provides for a shopping center near the Ross parcel of 30 to 40 acres.

Ordinance No. 3357 amended the 1966 comprehensive plan, designating the Ross property "urban" to allow the Ross project. Since the ordinance amended the city's comprehensive plan, the zoning of Clares Marsh does not conflict with that plan.[1] Thus, we need not consider further the allegation that zoning the property in violation of the comprehensive plan was arbitrary and capricious.

## B

Second, the Barries argue that the simultaneous adoption of a comprehensive plan and a zoning ordinance for Clares Marsh was arbitrary and capricious because it improperly combined adjudicatory and legislative proceedings. They contend that the requirement that a city be guided by the comprehensive plan in zoning is meaningless if a city may amend it to conform to the proposed zoning change. They reason that initially zoning a small parcel for a specific project—like a rezone—is adjudicatory action. And when the city council so acts, it may not legislatively amend the comprehensive plan. The trial court concluded, however, that the action is legislative because an initial zoning is involved.

■ Generally, when a municipality adopts a comprehensive plan and zoning code, it acts in a legislative, policy–

---

[1] At the time of the creation of its planning commission, Bremerton elected to exercise its zoning power pursuant to Const. art. 11, §§ 10 and 11, rather than under RCW 35.63. *Buell v. Bremerton*, 80 Wn.2d at 520. There apparently is not any express constitutional or statutory requirement that Bremerton zone in accordance with a comprehensive plan. *See Nelson v. Seattle*, 64 Wn.2d 862, 395 P.2d 82 (1964) (lack of adopted comprehensive plan does not invalidate rezoning under Const. art. 11, § 11).

making capacity. *Parkridge v. Seattle,* 89 Wn.2d 454, 463, 573 P.2d 359 (1978); *Leonard v. Bothell,* 87 Wn.2d 847, 850, 557 P.2d 1306 (1976); *Fleming v. Tacoma,* 81 Wn.2d 292, 299, 502 P.2d 327 (1972). However, in *Fleming,* the court held that subsequent rezonings are adjudicatory because: (1) the parties whose interests are affected are readily identifiable and the decision has a far greater impact on one group of citizens than on the public, (2) the decisions have localized applicability, and (3) zoning hearings are required by statute, charter, or ordinance, which shows that the decision–making process must be more sensitive to the rights of the individual citizen involved. *Fleming, supra* at 299. This rationale may require the characterization as "quasi–judicial" of the initial zoning of a relatively small area subsequent to comprehensive plan adoption.

Even if the initial preannexation zoning is "quasi–judicial," however, a separate proceeding for comprehensive plan amendment is not required. *See* RCW 35.13.177–.178. *Chestnut Hill Co. v. Snohomish,* 76 Wn.2d 741, 458 P.2d 891 (1969), *cert. denied,* 397 U.S. 988, 25 L. Ed. 2d 396, 90 S. Ct. 1119 (1970), *overruled on other grounds, Buell v. Bremerton,* 80 Wn.2d 525, 495 P.2d 1358 (1972) (upholding simultaneous initial zoning and amendment to a comprehensive zoning ordinance); *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971) (separate proceedings not required for amendment to comprehensive plan and interdependent implementing rezoning).

We hold that the simultaneous adoption of a comprehensive plan and corresponding zoning is not, in itself, arbitrary and capricious action.

## C

The Barries' third argument that the council acted arbitrarily and capriciously presents this question: Does a comprehensive plan amendment require a showing of changed circumstances and, if so, has this showing been made? A comprehensive plan amendment, the Barries argue, affects landowners' property rights so a showing that conditions

have changed is necessary. This court, however, has only required this showing where a municipality *rezones* property. *Parkridge v. Seattle, supra.*

■ In *Parkridge,* the court indicated that in a rezone, adjudicatory in nature, the usual presumption of validity of public officials' acts does not apply because the proceeding involves the forfeiture of rights or deprivation of use of property. A comprehensive plan, however, is not regulatory but merely suggests regulatory measures. *Lutz v. Longview, supra; State ex rel. Standard Mining & Dev. Co. v. Auburn, supra; Buell v. Bremerton, supra. See also Shelton v. Bellevue, supra,* where the court indicated that a comprehensive plan does not without regulatory implementation impose restrictions upon property. Since the plan itself does not deprive the landowner of the use of property, the rationale for requiring a showing of changed conditions does not exist.[2]

Even if changed conditions were necessary, there is substantial evidence of such a change. The Superior Court properly concluded that the City and Ross have carried this burden by showing that the area has changed from an undeveloped, sparsely settled area into a thriving commercial area.

## V

The next two issues concern the adequacy of the environmental impact statements. The first issue is: Are the county and city environmental impact statements inadequate as a matter of law because they do not discuss alternative shopping center sites?

■ The State Environmental Policy Act of 1971 (SEPA) (RCW 43.21C) applies to the actions of both the County and the City. The actions in question are "major actions significantly affecting the quality of the environment".

---

[2] Requiring changed conditions to amend a comprehensive plan would interfere with the plan's flexibility. This was recognized by the legislature when it provided that either changed conditions *or* further studies may justify amending a county plan. RCW 36.70.410.

RCW 43.21C.030(2)(c). Thus, SEPA policy is to ensure through a detailed environmental impact statement (EIS) the full disclosure of environmental information so that it can be considered during decision making. *Sisley v. San Juan County,* 89 Wn.2d 78, 84, 569 P.2d 712 (1977); *Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 273, 552 P.2d 674 (1976). The EIS must include alternatives to the proposed action. RCW 43.21C.030(2)(c)(iii). *And see* RCW 43.21C.030(2)(e).

■ EIS adequacy is a question of law subject to de novo review. *Ullock v. Bremerton,* 17 Wn. App. 573, 580, 565 P.2d 1179, *review denied,* 89 Wn.2d 1011 (1977); *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 285, 525 P.2d 774 (1974). Courts review the EIS to determine whether the environmental effects and reasonable alternatives are sufficiently disclosed, discussed and substantiated. *Mentor v. Kitsap County,* 22 Wn. App. 285, 289, 588 P.2d 1226 (1978), *Ullock v. Bremerton, supra* at 580; *Leschi Improvement Council v. State Highway Comm'n, supra* at 286. Adequacy is judged by the "rule of reason." *Mentor v. Kitsap County, supra; Cheney v. Mountlake Terrace,* 87 Wn.2d 338, 344, 552 P.2d 184 (1976).

We shall focus first upon the adequacy of the alternatives discussion in the county EIS. In the discussion of the "no-action" alternative (WAC 197-10-440(12)(b)), the county's final EIS addresses no development, some residential development and full residential development. Section 7.1. Sections 7.2 and 7.3 are devoted to more and less intensive commercial development, respectively. Section 7.4 concludes that Ross does not own any other appropriate county sites.

The central question is the meaning of WAC 197-10-440(12), which establishes guidelines for the discussion of alternatives in an EIS:

(12) Alternatives to the proposal. This subsection shall include the following items:

(a) *A description and objective evaluation of any reasonable alternative action which could feasibly attain the objective of the proposal.*

(i) Reasonable alternatives shall include any action which might approximate the proposal's objective, but at a lower environmental cost or decreased level of environmental degradation.

(ii) Reasonable alternatives may be those which are capable of being effected by either the lead agency or other agency having jurisdiction.

(b) The "no–action" alternative shall be evaluated and compared to the other alternatives.

(c) The adverse environmental effects of each alternative shall be identified.

(d) The analysis of alternatives should be sufficiently detailed to permit a comparative evaluation of each alternative and the proposal as described in subsection (6) of this section.

(e) *When the proposal is for a private project on a specific site, the alternatives considered shall be limited to the "no–action" alternative plus other reasonable alternative means of achieving the objective of the proposal on the same site or other sites owned or controlled by the same proponent* (which may include only alterations for mitigation under subsection (11) of this section). *This limitation shall not apply when the project proponent is applying for a rezone or contract rezone.*

(f) Subsection (12) may be integrated with subsection (11) of this section in order to more usefully present the information required by both subsections.

(g) The use of the term "reasonable" is intended to limit both the number and range of alternatives that shall be described and evaluated in this subsection, as well as the amount or level of detail which the EIS shall employ for each alternative that is discussed and evaluated.

(Italics ours.)

■ Kitsap County did not meet these requirements. Instead of describing alternative uses of the Ross property the county should have discussed alternative regional shopping center sites. This is because the limitation to means of achieving the objective on the same site does not apply to the Rosses as rezone applicants. Thus the rezone is subject

to WAC 197-10-440(12)(a), which requires an "objective evaluation of any reasonable alternative action which could feasibly attain the objective of the proposal." This refers to other means of achieving the *county's objective* (apparently a regional shopping center), not the Rosses'.

Other rules confirm this interpretation. While respondents Ross claim this is a "private project," WAC 197-10-040 states governmental action of a *nonproject nature* includes amendment of comprehensive plans or zoning ordinances. WAC 197-10-040(2)(c)(ii). This disqualifies a rezone as a "proposal . . . for a private project on a specific site". WAC 197-10-440(12)(e).

WAC 197-10-442(2) also supports this interpretation:

> The lead agency should be aware that *typically in developing and reviewing proposals for nonproject actions the range of alternatives is broader than in developing a proposal for a project action (which is often narrowed to a specific location and design). The proposal should be described in a manner which encourages consideration of a number of alternative methods of accomplishing its objective.* For example, an objective of an agency's proposal should be stated as "the facilitation of the movement of people from point A to point B" rather than "the widening of an urban arterial in order to accommodate additional privately-owned passenger vehicles."

(Italics ours.)

Here the objective to which alternatives must be addressed is construction of the regional shopping center, the aim of the county's action in rezoning. Discussion of the Rosses' shopping center project must be included in the EIS pursuant to WAC 197-10-060(1) and (2):

> (1) *The proposal considered* by an acting agency during the lead agency determination procedure, and by the lead agency *during* the threshold determination and *EIS preparation, shall be the total proposal* including its direct and indirect impacts. Whenever the word "proposal" or the term "proposed action" is used in this chapter, the discussion in subsection (2) of this section applies. In considering the environmental impacts of a

proposal during the threshold determination and EIS preparation, the discussion in subsection (3) of this section applies.

(2) *The total proposal is the proposed action, together with all proposed activity functionally related to it. Future activities are functionally related to the present proposal if:*

(a) The future activity is an expansion of the present proposal, facilitates or is necessary to operation of the present proposal; or

(b) *The present proposal facilitates or is a necessary prerequisite to future activities.*

(Italics ours.)

Rather than considering the "no–action" alternative to the no–zoning change the county should address "the alternative of not accomplishing the project's purposes" (*Trout Unlimited v. Morton*, 509 F.2d 1276, 1286 (9th Cir. 1974))—no regional shopping center construction.

Bremerton's final EIS, on the other hand, states that the objective is to annex the Clares Marsh area. "In addition, the adoption of land use and zoning plans . . . are intended to implement a portion of the . . . Sheridan Neighborhood Plan." Section 8.0. Section 8.2 is addressed to the range of alternatives for annexation, plan adoption and zoning. The City's "no–action alternative" is not to annex the site.

Appellants argue that the City's actual objective is to enable shopping center construction. Therefore, the City must discuss construction at other sites, they conclude.

The proposed action, however, covers a total of 75 acres. The Clares Marsh zoning is consistent with and was treated by the commission and council as part of the Sheridan Neighborhood Comprehensive Plan. The plan and zoning do not limit B–3 uses to a shopping center. Other commercial uses were contemplated.

We hold that the discussion of alternatives in the City's EIS is sufficient and adequate under the rule of reason. However, we find the County's EIS inadequate. It must be revised to include a discussion of alternative regional shopping center sites.

## VI

The second issue involving the environmental impact statements is: Are the County and City environmental impact statements inadequate as a matter of law because they do not discuss adverse effects on downtown Bremerton? Appellants argue that the County and City statements do not adequately discuss the socio–economic impact of the Ross center because they omit probable degenerative effects on the Bremerton Central Business District (CBD).

■■ RCW 43.21C.030(2)(c)(i) and (ii) require that an EIS disclose both the environmental impact and any unavoidable adverse environmental effects of the proposed action. SEPA declares that the state's policy is to "fulfill the *social, economic,* and other requirements" of citizens. (Italics ours.) RCW 43.21C.020(1)(c). *See* Note, *The Requirement for an Impact Statement: A Suggested Framework for Analysis,* 49 Wash. L. Rev. 939, 957 (1974) (socio–economic impacts fall within EIS requirement). Appellants cite several National Environmental Policy Act (NEPA) cases holding that socio–economic effects must be considered. *See, e.g., Rochester v. United States Postal Serv.,* 541 F.2d 967 (2d Cir. 1976) (placing postal service center outside urban core could cause increased commuting, loss of inner–city jobs and moving to suburbs, leading to economic and physical downtown deterioration and downtown post office abandonment, all contributing to urban decay and blight). Finally, federal guidelines for EIS preparation state that secondary or indirect consequences, including changed patterns of social and economic activities, should be included. 40 C.F.R. § 1500.8(a)(3)(ii). (1979).

Respondents Ross argue that Kitsap County was not required to discuss economic effects because it had not required such a discussion pursuant to WAC 197–10–446, which reads in part:

> In their guidelines, agencies may add additional elements covering social, cultural and/or economic issues to the list in WAC 197–10–444. Such additional elements

shall become part of the environment for EIS purposes, and not otherwise.

WAC 197–10–444, to which the above rule refers, does not expressly require a discussion of economic and social effects. Thus WAC 197–10–446 and WAC 197–10–444 are inconsistent with SEPA policies. *See* RCW 43.21C-.020(1)(c). Because the rules conflict with SEPA policy they are invalid. *Smith v. Greene,* 86 Wn.2d 363, 371, 545 P.2d 550 (1976). *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314, 545 P.2d 5 (1976).

We now turn to the question of whether the socio–economic discussion is adequate. A review of the county statement shows that it does not go beyond impact on CBD sales. Respondents argue that socio–economic effects are remote or speculative consequences which need not be covered. *Mentor v. Kitsap County,* 22 Wn. App. 285, 289, 588 P.2d 1226 (1978). However, the possible impact on the physical plant of the CBD is not remote or speculative, as evidenced by the indication that Sears will move to Ross center. The projected reduction in the CBD's share of department store type sales (52 to 35 percent) suggests possible additional vacancies. By focusing exclusively on sales impact the EIS overlooks the real possibility of lost jobs and tax base in the CBD and its possible resultant decline as Bremerton's social center.

The EIS should point out the possibility the project could lead to the demise of the CBD, as evidenced by experience in other areas. An EIS "'should disclose the history of success and failure of similar projects.'" *Sierra Club v. Morton,* 510 F.2d 813, 824 (5th Cir. 1975), quoting *Natural Resources Defense Council, Inc. v. Grant,* 355 F. Supp. 280, 288 (E.D.N.C. 1973). Because experts disagree on the possible effects, the statement should set forth the responsible opposing views rather than ignoring the potential debilitating impact. *Citizens Against Toxic Sprays, Inc. v. Bergland,* 428 F. Supp. 908, 922 (D. Ore. 1977); *Committee for Nuclear Responsibility, Inc. v. Seaborg,* 463

F.2d 783, 787 (D.C. Cir.), *injunction denied,* 404 U.S. 917, 30 L. Ed. 2d 191, 92 S. Ct. 242 (1971).

The City's final EIS devotes more attention to the potential adverse impact. The EIS states:

> The addition of retail facilities outside the CBD could produce a similar effect on the Bremerton CBD as the Tacoma Mall has had on the Tacoma CBD. The downtown Tacoma area has experienced a decade of economic stagnation due in part to the development of the Tacoma Mall. A concerted planning and renewal effort in the Bremerton CBD could create the conditions which would improve the downtown business climate. The future of the CBD is highly dependent upon which stores remain there. If one of the major department stores, such as Sears, moves out of the downtown area to the proposed site, it could result in fewer shoppers in the CBD which eventually could mean that other stores could leave for the new shopping centers and the downtown could become a less desirable retail area.

Appellants argue that the City's EIS fails to suggest ways in which mitigation can be accomplished. The EIS paragraph set out above, however, does suggest that a "concerted planning and renewal effort" could improve business conditions.

Respondents Ross argue that since the City could order further SEPA review there is no need to "analyze vague and speculative socio–economic impacts at the preliminary zoning stage." While further review may be required under WAC 197–10–660(2), this case is unlike *Ullock v. Bremerton,* 17 Wn. App. 573, 565 P.2d 1179, *review denied,* 89 Wn.2d 1011 (1977). There no specific project was planned at zoning time so environmental consequences could not be measured. The consequences in the present case are anticipated—not remote and speculative. *See Davis v. Coleman,* 521 F.2d 661, 676 (9th Cir. 1975).

We conclude that the discussion of socio–economic effects in the County EIS is inadequate. Even though the

City's EIS is somewhat deficient in coverage of socio–economic effects and CBD mitigation measures, we believe that it is sufficient. It is adequate under the rule of reason.[3]

We reverse the Superior Court's holding that the County's EIS is adequate and therefore declare the rezone ordinance invalid. The cause is remanded to the county commissioners for an EIS revision which should include a discussion of alternative shopping center sites and a more adequate discussion of the socio–economic impact of the project. We affirm the judgment of the Superior Court upholding the City of Bremerton's preannexation comprehensive plan adoption and zoning for the Clares Marsh area.

UTTER, C.J., ROSELLINI, STAFFORD, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., and LOY, J. Pro Tem., concur.

---

[3]Appellants also assert that there were several defects in the board's zoning procedures and that the trial court committed reversible error in its consideration of the evidence. These contentions lack merit and do not warrant discussion.