[No. 8491-4-III.   Division Three.   November 3, 1987.]

SEAPC, *Appellant*, v. CAMMACK II ORCHARDS, ET AL, *Respondents*.

*Michael Gendler* and *Bricklin & Gendler,* for appellant.

*John Wallace* and *Ogden, Ogden & Murphy; Judith L. McCauley, Prosecuting Attorney,* for respondents.

THOMPSON, J.—Southeast Area Property Committee (SEAPC), a nonprofit corporation, appeals from a judgment dismissing its action challenging the Douglas County Board of Commissioners' approval of a 31–lot property subdivision owned by Cammack II Orchards. We affirm.

In March 1985, Cammack, intending to develop contiguous parcels of land in Douglas County, filed applications for a rezone, a conditional use permit for a planned housing development containing 234 units of manufactured housing, and for approval to subdivide the perimeter area into 31 lots. In April 1985, a draft environmental impact statement (DEIS) was issued pursuant to requirements of the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C. A public hearing was conducted by the County in May to

solicit comments on the DEIS. A summary of the comments was incorporated into the final environmental impact statement (FEIS) issued in October 1985.

On November 20, 1985, the Douglas County Planning Commission conducted a hearing to solicit public comment on the proposal. Following receipt of public testimony and staff recommendations, the planning commission agreed to continue the hearing until January 22, 1986. On January 17, 1986, Cammack withdrew its application for a conditional use permit involving the planned housing development, leaving only the modified 31–lot subdivision for consideration.[1] Following its January 22 public hearing, the planning commission recommended approval and entered findings and conclusions. On February 10, the Board of County Commissioners received the planning commission's recommendation and, after a February 24 public hearing during which public testimony was taken, the board made findings of fact and conclusions of law approving the subdivision request. On a writ of review to the superior court, the board's decision was upheld. SEAPC appeals.

SEAPC first contends section 4.06.2 of the Douglas County Subdivision Regulations, which requires a subdivision application be submitted at least 15 days prior to consideration, was violated when changes in the subdivision application were made 5 days prior to the continued planning commission hearing. Notice before the county commissioners' hearing is not being challenged, however. SEAPC argues that failure to give notice of changes in the proposal severely prejudiced the affected citizens' ability to prepare for the planning commission hearing, particularly with regard to the reduction of minimum dwelling sizes. The trial court found that because the subsequent public hearing before the Board of County Commissioners was de novo and because all individuals who wished to present

---

[1]Modifications in the proposal included reduction of minimum dwelling size from 1,250 to 1,000 square feet, which allowed the inclusion of manufactured housing in the subdivision.

evidence or testimony before the commissioners were given proper notice and an opportunity to do so, no prejudice occurred.

Section 4.06.6 of the subdivision regulations sets forth the notice requirement for hearings before the planning commission and requires mailing to adjacent property owners and certain governmental entities, as well as publication in the official county newspaper at least 10 days prior to the hearing date. Although the content of the notice is not specified by the ordinance, SEAPC argues section 4.06.2 operates to essentially prohibit any changes in the application within 15 days prior to the date of the hearing. We find that interpretation too restrictive.

In *Glaspey & Sons, Inc. v. Conrad,* 83 Wn.2d 707, 521 P.2d 1173 (1974), the Supreme Court invalidated notice of a zoning hearing when the county commissioners presented proposed amendments at the hearing itself and considered maps which had not been available for review at the county office prior to the hearing. The court ruled that notice failed because it did not disclose the board's plan to propose substantial amendments on its own. "Had one gone to the board's office to study the ordinance in preparation for the hearing, as plaintiff did, no indication of contemplated changes would have been found". *Glaspey & Sons,* at 711.

However, *Glaspey* is distinguishable for at least two reasons: (1) here, the modified application was available for at least 5 days in the administrative offices, and (2) the hearing before the planning commission did not result in a final decision, but rather in a recommendation to be considered by the county commissioners in the subsequent hearing. Although material changes to a proposal within the 10–day notice period could, in some instances, amount to a technical due process violation, we hold these parties were afforded the opportunity to be fully heard at the proceeding before the county commissioners, thereby minimizing any prejudice from being unprepared and/or uninformed about the purpose of the planning commission hearing. *See Nisqually Delta Ass'n v. DuPont,* 103 Wn.2d 720, 727, 696

P.2d 1222 (1985).

SEAPC next contends the County failed to comply procedurally with SEPA by either: (1) treating the modified subdivision application as an entirely new proposal requiring the applicant to submit an environmental checklist, WAC 197–11–315, –340; or (2) utilizing the adoption procedure set forth in WAC 197–11–630.

WAC 197–11–600 sets forth when existing documents may be used to meet all or part of an agency's responsibilities under SEPA. Subsection (4) contains five methods of using existing documents: adoption, incorporation by reference, addendum, preparation of a supplemental environmental impact statement (SEIS), and adoption of a substantially similar existing environmental impact statement (EIS). Subsection (2) provides in part: "The proposals may be the same as, or different than, those analyzed in the existing documents". Subsection (4)(a) provides: "Agencies acting on the same proposal for which an environmental document was prepared are not required to adopt the document . . ." In excusing formal adoption, the trial court ruled subsection (4)(a) applied and that no further environmental analysis was necessary since the remaining subdivision application was "similar enough" to the original proposal that the original analysis adequately addressed the proposal.

An action which does not have an environmental impact substantially different from an earlier proposed action does not require either a new threshold determination or a new or supplemental draft or final environmental impact statement. *Nisqually Delta Ass'n,* at 728; *Save a Neighborhood Env't v. Seattle,* 101 Wn.2d 280, 283, 676 P.2d 1006 (1984). In the instant case, the subsequent proposal impacted the environment less than the original expanded application. The trial court correctly ruled it was not necessary to prepare a new document and/or formally adopt the original environmental impact statement.

The next issue is whether the trial court erred in ruling the FEIS was adequate. Environmental impact

statements are required for proposals for legislation and other major actions having a probable significant, adverse environmental impact. RCW 43.21C.031. EIS adequacy is a question of law subject to de novo review to determine whether the environmental effects and reasonable alternatives are sufficiently disclosed, discussed and substantiated. *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 854, 613 P.2d 1148 (1980). Adequacy is judged by the "rule of reason". *Barrie,* at 854 (quoting *Mentor v. Kitsap Cy.*, 22 Wn. App. 285, 588 P.2d 1226 (1978)).

SEAPC attacks the adequacy of the environmental impact statement, contending key comments by officials and others were altered or omitted and nonexistent studies were included, whereas two relevant SEAPC studies were excluded. However, the record does not substantiate SEAPC's claims, but if it did, the trial court was correct in ruling that the purported faults pertained only to the abandoned portion of the original proposal.

■ SEAPC next contends the County erred in refusing to consider the development's future cumulative impact beyond the 31–lot subdivision. Agency decision makers must consider more than the narrow, limited environmental impact of the immediate, pending action and cannot close their eyes to ultimate probable environmental consequences. *Cheney v. Mountlake Terrace,* 87 Wn.2d 338, 344, 552 P.2d 184 (1976). However, SEPA does not require that every remote and speculative consequence of an action be included in the EIS. *Cheney,* at 344; *Richland v. Franklin Cy. Boundary Review Bd.,* 100 Wn.2d 864, 868, 676 P.2d 425 (1984).

An EIS need not cover subsequent phases if the initial phase under consideration is substantially independent of the subsequent phase or phases, and the project would be constructed without regard to future developments. *Cheney,* at 345 (citing *Trout Unlimited v. Morton,* 509 F.2d 1276, 1285 (9th Cir. 1974)). In the instant case, although future development was not totally ruled out, it cannot be said the 31–lot subdivision was dependent upon

subsequent proposed development. The trial court's reasoning was consistent with the holding in *Richland* that under the circumstances, environmental considerations would best be served by waiting until a specific proposal was made. *See Richland,* at 868; *see also Murden Cove Preserv. Ass'n v. Kitsap Cy.,* 41 Wn. App. 515, 526, 704 P.2d 1242 (1985).

We are next asked to determine whether the County had substantive authority under SEPA to deny the proposal based on adverse impact on the value of surrounding property. A governmental decisionmaking body whose deliberation is subject to the requirements of SEPA is empowered by that act to deny a project application on environmental grounds. *Department of Natural Resources v. Thurston Cy.,* 92 Wn.2d 656, 663, 601 P.2d 494 (1979), *cert. denied,* 449 U.S. 830 (1980). SEPA is an overlay of law which supplements existing statutory authority, and Washington boards of county commissioners are required by SEPA to deliberate on environmental concerns as a part of the platting decision process. *Natural Resources,* at 664; *Loveless v. Yantis,* 82 Wn.2d 754, 513 P.2d 1023 (1973).

In addition to the elements of the natural and "built" environment enumerated in WAC 197–11–444, Douglas County Code 19.04.030 lists the following additional elements as part of the environment "for purposes of E.I.S. content, but . . . not . . . criteria for threshold determinations or . . . other function[s] or purpose[s] . . .": economy, social policy analysis, and cost benefit analysis. WAC 197–11–448 explains requisite considerations in the following manner:

(1) SEPA contemplates that the general welfare, social, economic, and other requirements and essential considerations of state policy will be taken into account in weighing and balancing alternatives and in making final decisions. However, the environmental impact statement is not required to evaluate and document all of the possible effects and considerations of a decision or to contain the balancing judgments that must ultimately be made by the decision makers. . . .

(2) The term "socioeconomic" is not used in the statute or in these rules because the term does not have a uniform meaning and has caused a great deal of uncertainty. . . .

(3) Examples of information that are not required to be discussed in an EIS are: Methods of financing proposals, economic competition, profits and personal income and wages, and social policy analysis . . . EISs may include whether housing is low, middle, or high income.

■ Even though the Douglas County Code includes economy as an element to be considered in an EIS, adverse impacts on surrounding property values are more related to "profits and personal income and wages" expressly exempted from EIS discussion by WAC 197–11–448(3). *See also In re Spring Vly. Dev.*, 300 A.2d 736, 751 (Me. 1973) (effects of development on property values was outside purposes of site location law). Thus, it was not error to decline to consider devaluation of surrounding private property.

SEAPC next refers to a map contained in the Douglas County Comprehensive Plan which designates the geographic area at issue as prime agricultural land and alleges the comprehensive plan was not properly considered. Unchallenged conclusion of law 12 stated:

The proposed subdivision complies with the S–R—Suburban Residential District, Douglas County Comprehensive Zoning Regulations, Section V requirements and all other aspects of the Douglas County Comprehensive Zoning Regulations, and all lots in the proposed subdivision meet or exceed the minimum lot size required.

Any inconsistency between the zoning ordinance and the comprehensive plan must be resolved by application of the zoning ordinance. *Nagatani Bros., Inc. v. Skagit Cy. Bd. of Comm'rs*, 108 Wn.2d 477, 480, 739 P.2d 696 (1987); *Norco Constr., Inc. v. King Cy.*, 97 Wn.2d 680, 649 P.2d 103 (1982). The record and findings support the trial court's conclusion on this issue.

The final issue is whether an alleged failure to make adequate provisions for parks, open space, and drainage

renders the subdivision approval arbitrary and capricious. RCW 58.17.110 sets forth the following factors to be considered in an approval or disapproval of a subdivision and dedication:

The city, town, or county legislative body shall inquire into the public use and interest proposed to be served by the establishment of the subdivision and dedication. It shall determine if appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and schoolgrounds, and shall consider all other relevant facts and determine whether the public interest will be served by the subdivision and dedication.

Although the record contains conflicting evidence regarding satisfaction of the provisions required by the statute, adequate inquiry was made of each of the criteria and, given the conditions to development imposed by the planning commission and adopted by the commissioners regarding right of way, street improvements, and other essential services, that decision was not arbitrary and capricious.

Affirmed.

McINTURFF, C.J., and GREEN, J., concur.