[No. 24246–6–I. Division One. August 27, 1990.]

BALSER INVESTMENTS, INC., *Respondent,* v. SNOHOMISH COUNTY, ET AL, *Appellants.*

30

*Seth R. Dawson, Prosecuting Attorney,* and *Gordon W. Sivley, Deputy,* for appellants.

*James H. Allendoerfer,* for respondent.

WINSOR, J.—Snohomish County (County) appeals a superior court order on a writ of certiorari finding that the Snohomish County Council and the Snohomish County Hearing Examiner acted arbitrarily and capriciously in denying Balser Investments' rezone application. The Superior Court overturned certain determinations made by the examiner and required the examiner to reconsider Balser's application. We reverse and reinstate the County Council's decision.

In September 1987, Balser sought approval from the County to develop a 45–lot residential plat on approximately 19.3 acres of land adjacent to the City of Mill Creek. The project, known as Cherrywood Residential Park, envisions development of the area at a density of approximately 2.33 dwelling units per acre. Since the current zoning allows a maximum density of one dwelling unit per acre, the application involved a rezone. Balser applied for a rezone from the Suburban Agriculture 1–acre (SA–1) classification to the Planned Residential Development 9600 (PRD) classification.

The North Creek Comprehensive Plan (NCP) is the planning document adopted by the County to guide development in the area.[1] The NCP classifies residential development using four land use designations: (1) watershed–site sensitive (WSS) areas,[2] (2) rural, (3) suburban, and (4) high urban. Densities vary according to the designation. In reviewing the Cherrywood proposal, the Planning Department (PD) concluded that according to the NCP map, the Balser property was 7.06 acres suburban and 12.44 acres rural. Of those acreages, the PD classified .12 acres of the suburban portion and 5.01 acres of the rural portion as WSS areas. In so classifying the property, the PD treated the WSS designation as an overlay, rather than a land use category.

A public hearing was held on the project in January 1988. On February 10, 1988, the hearing examiner issued a decision denying the rezone application. The principal basis for the examiner's denial was his determination that the NCP's adopter intended all of the subject property to be designated rural, even though the NCP map can be read as designating part of the land suburban. In his decision, the examiner discussed the NCP land use map and conceded that

> [i]f one were to rigidly overlay the comprehensive plan map on the ownership and zoning map, one could conclude as has the PD that a small area in the southwest corner of the site . . . is designated Suburban, that the vast majority of the site is designated Rural and that a small area in the northwest is designated WSS.

---

[1]The adopter was the County Board of Commissioners. Some time after the NCP's adoption, the Board's legislative power was transferred to the County Council.

[2]The NCP is somewhat confusing in the use of the term "watershed–site sensitive". While it is used as a land use category in one part of the document, another part of the plan uses the term as an overlay designation. An overlay is an additional land use regulatory layer in addition to ordinary zoning that may serve a wide variety of purposes, such as protection of environmentally sensitive areas or preservation of historic landmarks or districts. R. Settle, *Washington Land Use and Environmental Law and Practice* § 2.12(f), at 71 (1983).

He also found, however, that if the corners were squared off instead of rounded, the entire property would have been designated rural. The examiner ultimately concluded that the NCP's adopter intended the entire subject property to be designated rural. He based this decision partially on a prior County decision and action on a plat application for an area known as Penny Creek. Although the Penny Creek plat overlapped a portion of the Cherrywood project land that appears to be designated suburban by the NCP map, the plat application indicated the entire area was designated rural. The examiner also relied on the fact that the present zoning classification of SA–1 was enacted after the adoption of the NCP, in an effort to make zoning consistent with the NCP's provisions. The examiner stated: "All evidence and official records point to a conclusion that the SA–1 zoning was purposefully applied to the subject property to ensure its development consistent with the Rural designation."

The examiner's final conclusion on compatibility with the comprehensive plan was that

[a] rezone . . . should not be approved until the county has had an opportunity to reevaluate the boundary between Suburban and Rural designations on the NCP. Unless and until such a reevaluation occurs, the boundaries should be held at the edge of Mill Creek as was obviously intended and not allowed to expand further to the east.

Balser appealed the decision to the County Council. The County Council denied the application and adopted the findings of fact and conclusions of law of the examiner. Balser then filed an application for a writ of certiorari in superior court. The Superior Court overturned the examiner's decision, ruling that it was arbitrary and capricious for three reasons: (1) the examiner ignored the NCP's designation of 7.06 acres of the property as suburban and exceeded his jurisdiction by treating the entire property as rural; (2) the examiner failed to consider the WSS designation as a separate and distinct land use category in the NCP, and failed to consider that 5.01 acres of the property lie within the WSS category; and (3) the examiner failed to

consider changed circumstances affecting proper land use classification of the subject property.

The County appeals the Superior Court's order, making two assignments of error: (1) Balser's application for a writ of certiorari should have been dismissed because of Balser's failure to name other landowners as plaintiffs to the action; and (2) the Superior Court erred in finding the examiner's decision arbitrary and capricious.

I

The County first argues that the trial court lacked jurisdiction to consider the challenge to the rezone decision because Balser failed to name all indispensable parties in the action, namely the other owners of the subject property. The record indicates that Balser owns only a portion of the subject property; the rest is owned by a number of individuals who were unnamed in the writ application. However, Balser has an option to purchase the entire parcel and express written authority from all the owners to file all development applications related to the Cherrywood project.

The first flaw in the County's argument is its assertion that the question is jurisdictional in nature. The doctrine of indispensability is not jurisdictional, but founded on equitable considerations. *Cathcart–Maltby–Clearview Comm'ty Coun. v. Snohomish Cy.*, 96 Wn.2d 201, 206, 634 P.2d 853 (1981).

The County correctly argues that Washington courts have repeatedly held that property owners are indispensable parties in an action reviewing a land use decision. There are, however, several distinguishing factors between the circumstances in those cases and this one. In each case in which the issue has been addressed, the plaintiff, usually a neighbor or public interest group, failed to name the property owners as defendants. *See, e.g., Tellinghuisen v. King Cy. Coun.*, 103 Wn.2d 221, 222, 691 P.2d 575 (1984) (neighbors failed to name property owners as defendants in appeal of rezone decision); *North St. Ass'n v. Olympia*, 96

Wn.2d 359, 635 P.2d 721 (1981) (in each of three consolidated appeals, a neighborhood association or interested party failed to name or serve property owners as defendants in appeal of a land use decision); *Cathcart,* 96 Wn.2d at 206 (residents of neighboring communities failed to name property owners as defendants); *Woodward v. Spokane,* 51 Wn. App. 900, 903, 756 P.2d 156 (neighbors failed to name property owners as defendants in appeal of rezone), *review denied,* 111 Wn.2d 1027 (1988); *Veradale Vly. Citizens' Planning Comm. v. Board of Cy. Comm'rs,* 22 Wn. App. 229, 588 P.2d 750 (1978) (neighborhood group failed to name property owners and plat sponsors as defendants in consolidated appeal of land use decisions); *Andrus v. Snohomish Cy.,* 8 Wn. App. 502, 503, 507 P.2d 898 (1973) (interested party failed to name property owner as defendant in appeal of land use decision). The principle gleaned from these cases is that if successful applicant/property owners are omitted as defendants in the appeal of a land use decision, there is a very real danger that their interests would not be adequately represented by other defendants named in the action. *See Sumner–Tacoma Stage Co. v. Department of Public Works,* 142 Wash. 594, 597, 254 P. 245 (1927).

That danger, however, is not present here. In this case, the property owners are missing plaintiffs in an appeal of an unsuccessful rezone application, and are all individuals who have consented to representation by a named plaintiff. An examination of the purposes of the joinder rule reveals that its purposes are not frustrated by the absence of these landowners. CR 19 is designed to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent determinations. 7 C. Wright, A. Miller & M. Kane, *Federal Practice* § 1602, at 21 (2d ed. 1986). The County was not prejudiced by Balser's failure to include those property owners as parties, as there is no problem with multiple liability or inconsistent determinations. *See Western Union Tel. Co. v. Pennsylvania,* 368 U.S. 71, 7 L. Ed. 2d 139, 82 S.

Ct. 199 (1961) (action could not go forward when other parties claiming an interest in subject matter of dispute were not joined and there existed a possibility defendant would be exposed to multiple liability); 7 C. Wright, A. Miller & M. Kane, *supra* § 1602, at 24. Nor is there a problem with deprivation of property rights of the absent owners. Since all the absent landowners have agreed to have Balser represent their interests, their interests are protected, and they have waived their rights to formally participate in the action. Accordingly, it would be inequitable to dismiss the case under these circumstances. *See Cathcart*, 96 Wn.2d at 206; *cf. Compania Trasatlantica Espanola, S.A. v. Torres*, 358 F.2d 209, 214 (1st Cir. 1966); *Geroux v. Fleck*, 33 Wn. App. 424, 427, 655 P.2d 254 (1982), *review denied*, 99 Wn.2d 1003 (1983); 3A L. Orland, Wash. Prac., *Rules Practice* § 5225, at 371 (3d ed. 1980).

## II

■ We now turn to the question of whether the Superior Court erred in finding that the examiner's decision was arbitrary and capricious. Preliminarily, we note that on appeal of an order on a writ of certiorari, an appellate court reviews the administrative record and does not rely upon the superior court's findings of fact and conclusions of law. *Grader v. Lynnwood*, 45 Wn. App. 876, 880, 728 P.2d 1057 (1986).

■■ A reviewing court will overturn a governmental body's rezoning decision only if it is arbitrary, capricious or contrary to law. *Mall, Inc. v. Seattle*, 108 Wn.2d 369, 374, 739 P.2d 668 (1987); *Murden Cove Preserv. Ass'n v. Kitsap Cy.*, 41 Wn. App. 515, 519, 704 P.2d 1242 (1985). A decision is arbitrary and capricious if it is

willful and unreasonable action, without consideration and a disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached.

*Buell v. Bremerton,* 80 Wn.2d 518, 526, 495 P.2d 1358 (1972). The Supreme Court has recently commented on that often quoted language:

> From this language several principles are distilled. First, an error in judgment is not arbitrary and capricious. A judicial conclusion that the administrative decision was erroneous is not sufficient. Second, the action essentially must be in disregard of the facts and circumstances involved. Third, the court necessarily looks to the facts before the administrative agency.

*State v. Ford,* 110 Wn.2d 827, 830–31, 755 P.2d 806 (1988).

■ Courts give considerable deference to the construction of ordinances and other legislation by those officials charged with their enforcement. *Mall, Inc.,* 108 Wn.2d at 377–78. The expertise of administrative agencies is often a valuable aid in interpreting and applying ambiguous legislation in harmony with legislative policies and goals. Administrative officials may appropriately "fill in the gaps" where necessary to effectuate a statutory scheme, as long as the official does not purport to *amend* the statute. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 448, 536 P.2d 157 (1975).

With these principles in mind, we turn to the merits of the challenge. The County first argues that the trial court erred by concluding that the examiner acted arbitrarily and capriciously in evaluating the project as though the comprehensive plan designated the entire parcel rural.

It is undisputed (1) that a significant portion of the property falls within the suburban designation line on the NCP map, but (2) that the entire property is *zoned* for one dwelling unit per acre under the County zoning code. In addition, both sides agree that Washington law does not require the examiner to strictly adhere to the NCP. *See Barrie v. Kitsap Cy.,* 93 Wn.2d 843, 850, 613 P.2d 1148 (1980) (County did not act arbitrarily and capriciously by adopting a rezone which did not conform to comprehensive plan); *Buell,* 80 Wn.2d at 526 (although plan did not provide for use granted in rezoning, action did not constitute illegal spot zoning).

The examiner decided that the intent of the NCP's adopter, the County, was to designate the entire parcel rural. The decision of the examiner reveals two bases for that finding: (1) a prior County decision on a plat application for Penny Creek which designated the entire parcel rural, including an area of the current Cherrywood project that falls within the suburban designation on the NCP map; and (2) the County's enactment of the SA–1 acre zoning classification for the subject property shortly after the NCP's adoption, in an effort to carry out the adopter's intent. Based partly on these facts, the examiner concluded that it was most appropriate to consider the entire project to be designated rural, even though the NCP map contains a curved line which can be read to split the Balser property into suburban and rural designations.

An examination of the record establishes that the examiner's conclusion is not arbitrary and capricious. First, the Penny Creek application, submitted in January 1980 (soon after the NCP was adopted), described the appropriate land use category under the NCP as rural residential, even though some of the land lies west of the curved line, and therefore arguably within the NCP map's suburban designation. The fact that Penny Creek plat abuts the Mill Creek city limits indicates that the County, the landowner and the examiner considered the Mill Creek city limits to be the NCP's intended boundary of the rural designation (rather than the curved line). This justification provides a rational basis from which the examiner could reasonably conclude that the NCP's adopter, the County, intended the rural designation boundary to correlate with the Mill Creek city limits, and not apply to the subject property.

The examiner's second justification, that the SA–1 zoning classification supports his determination to treat the entire Balser property as rural, is also substantiated by the record and not manifestly unreasonable. The zoning classification was enacted by the County shortly after its adoption of the NCP, in an effort by the County to carry out the provisions of the NCP and its map. This evidence strongly suggests

that the rural designation was intended to cover the entire parcel, as the examiner concluded.

We accord considerable deference to the examiner's construction of the NCP and the zoning code. *Mall, Inc.*, 108 Wn.2d at 377–78. Additionally, the examiner need not strictly adhere to the provisions of the NCP. *Barrie*, 93 Wn.2d at 850. Here, the examiner had a rational and principled basis on which he rested his decision to apply the rural designation to the entire parcel. Given the historical precedent supporting the decision, and the adoption of those conclusions by the County Council, the legislative body responsible for amendment of the NCP, we hold that this determination was not arbitrary and capricious.

The County next argues that the Superior Court erred in determining that the examiner failed to consider the NCP's WSS designation as a separate and distinct land use classification, and instead erroneously treated it as an overlay designation. As support, the County cites the PD's final recommendation on the rezone proposal, which also characterizes the WSS designation as an overlay.

Balser concedes in its brief that the NCP is confusing in its use of the WSS designation as both an overlay and an actual land use classification. Indeed, it is difficult to tell from the text of the plan how the adopters intended the WSS category to apply. Because the NCP's application of the WSS designation is ambiguous, we accord deference to the manner in which the examiner and the PD, the entities charged with administration and enforcement of the NCP, applied it. *See Mall, Inc.*, 108 Wn.2d at 377–78. Since the PD also treated it as an overlay, we conclude that the examiner did not act arbitrarily and capriciously in treating it in the same manner.

The last reason given by the Superior Court for overturning the examiner's decision was that the examiner failed to consider Balser's argument relating to changed circumstances in surrounding land use that could justify the rezone. On appeal, the County argues that even if the

evidence presented by Balser showed significant changed circumstances, such evidence does not mandate rezoning.

The following burden of proof standards apply to a showing of changed circumstances to justify a rezone:

> (1) there is no presumption of validity favoring the action of rezoning; (2) the proponents of the rezone have the burden of proof in demonstrating that conditions have substantially changed since the original zoning . . .; and (3) the rezone must bear a substantial relationship to the public health, safety, morals or welfare.

*Parkridge v. Seattle,* 89 Wn.2d 454, 462, 573 P.2d 359 (1978). In accordance with these principles, Balser had the burden of proof to demonstrate that substantially changed conditions justified rezoning the parcel.

 Balser argues that under the *Parkridge* standard, the examiner had an obligation to consider his evidence of changed circumstances, but failed to do so. *Parkridge* involved testing the validity of an action approving a rezone, not the situation presented here: the validity of an action *denying* a rezone. 89 Wn.2d at 454. Nevertheless, we agree with Balser that the import of *Parkridge* is that a rezone applicant should have the opportunity to present and have such evidence considered by the examiner. We note, however, that while the Parkridge court stated that a showing of substantially changed circumstances was one potential justification for a rezoning action, it certainly did not mandate that a zoning official must grant a rezone if changed circumstances are present.

We disagree with Balser's assertion that the examiner failed to consider its proffered list of changed circumstances. At oral argument Balser admitted that it was not prevented from presenting evidence of all changes it thought pertinent. Moreover, in his decision, the examiner explicitly recognized that the validity of a rezone is to be judged by the changed circumstances test of *Parkridge* and

addressed the evidence Balser presented.[3] *Parkridge* requires no more.

While it is certainly true that a different conclusion might be drawn from the evidence presented to the examiner, it is not our task to review his decision de novo. The examiner's conclusions are by no means arbitrary and capricious; rather, they are the result of a logical and well reasoned analysis.

The Superior Court's order on the writ of certiorari is reversed, and the County Council's decision is reinstated.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.

PEKELIS and FORREST, JJ., concur.

---

[3]Nevertheless, Balser lists in its brief what it describes to be 10 changes affecting land use justifying the rezone that it contends were not considered by the examiner. Although Balser fails to make any reference to the record indicating that it presented this evidence to the examiner, we have independently examined the record and determined that the examiner adequately recognized each of the legitimate changes to which Balser calls our attention. In the unpublished portion of this opinion, which has no precedential value, we have briefly recounted each of these items and note where each was addressed by the examiner.