[No. 28734-6-I.   Division One.   October 5, 1992.]

STEVEN ENGLUND, *Appellant,* v. KING COUNTY, ET AL, *Respondents.*

*James V. Handmacher* and *Bonneville, Viert, Morton & McGoldrick,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Charles E. Maduell, Deputy; Darrell S. Mitsunaga, William R. Hickman, Robert D. Johns,* and *Reed McClure,* for respondents.

PEKELIS, J. — Steven Englund appeals a trial court order on a writ of certiorari affirming the King County Council's decision to rezone property owned by Cashmere Manor, Inc., Rigby Development Co., Inc., and Robert and Jane Doe Verzani (Cashmere Manor) from suburban residential (SR) to residential mobile home park (RMHP). Englund contends that there is insufficient evidence in the record to support the Council's rezone action. We affirm.

I

On December 18, 1986, Cashmere Manor filed an application to rezone 29.02 acres near Federal Way from SR to RMHP. Cashmere Manor proposed dividing the parcel into 132 lots at a density of 4.5 units per acre.

The original SR zoning of the property dates back to the 1975 Federal Way Community Plan and Area Zoning, which implemented a recommended density of 4 to 9 units per acre. The SR zoning was retained in a 1980 update.

In 1981, the Council adopted ordinance 5318 creating the RMHP classification. Prior to that time, mobile home parks could only be created through residential subdivisions or planned unit developments. By establishing the RMHP classification, the Council sought:

> A. To provide a suitable living environment within a park-like atmosphere for families residing in mobile homes;
> B. To encourage variety in housing styles within areas otherwise designated for single-family residential development by permitting mobile home parks at the approximate density allowed in the surrounding area; [and]
> C. To permit flexibility in the placement of mobile homes on a site in order to minimize costs associated with development of roads, utilities, walkways, and parking facilities, while providing adequate common and private open space.

King County Code (KCC) 21.20A.010(A), (B), (C).

In September of 1986, the Council adopted ordinance 7746 which further revised the Federal Way Community Plan and Area Zoning. The 1986 update focused primarily on "commercial, industrial, and multi-family housing development policies and zoning". The 1986 update did not change the zoning on the property owned by Cashmere Manor.

On December 29, 1988, a hearing examiner ruled on Cashmere Manor's rezone application and recommended that it be denied. The examiner concluded that there had been no substantial change in circumstances specifically affecting the property since the last area zoning. According to KCC 20.24-.190(D), an applicant seeking a rezone must adduce "substantial evidence" that:

> 1. Since the last previous area zoning . . . of the subject property, . . . other conditions or circumstances affecting the subject property have undergone substantial and material change not anticipated or contemplated in the community plan or area zoning;
> 2. The impacts from the changed conditions or circumstances affect the subject property in a manner and to a degree

different than other properties in the vicinity such that area rezoning or redesignation is not appropriate; and

3. The requested reclassification or redesignation is required in the public interest.

In his written findings, the examiner stated that the 1981 enactment of ordinance 5318 establishing the RMHP zone was not a changed condition which impacted Cashmere Manor's property differently than other properties in the vicinity. The examiner acknowledged, however, that:

King County has, in several instances, authorized reclassification of property from single-family residential to RMHP, based upon the theory that the enactment of the RMHP zone classification in 1981 constituted a changed circumstance sufficient to meet the test of KCC 20.24.190.D.

On May 1, 1989, the Council conducted a public hearing on Cashmere Manor's rezone application. The Council rejected the hearing examiner's recommendation that mere creation of the RMHP classification did not effect a change in circumstances. The matter was remanded to the examiner for additional findings on mobile home park availability.

On July 19 the hearing examiner entered supplemental findings which stated that (1) out of the 37 mobile home parks in south King County, approximately 50 vacant spaces existed, (2) the owners of a mobile home development located close to the proposed Cashmere Manor site were in bankruptcy and planned to redevelop the park, and (3) vacant spaces in mobile home parks were not generally available for the relocation of mobile homes displaced from other parks.

On October 23 the Council adopted, by a 5-to-4 vote, ordinance 9189 approving the rezone application. The Council expressly concluded that the proposed rezone met the requirements of KCC 20.24.190 and entered the following written findings in support of its determination:

SECTION 2. [T]hat the 1981 enactment of Ordinance No. 5138 ... which established the RMHP zone classification, is a change in conditions and circumstances which affects the subject property in a manner and to a degree different than other properties in the vicinity; that this change in conditions and circumstances was not anticipated or contemplated in the Community Plan or Area Zoning encompassing this property; that the

requested reclassification of the subject property from SR to RMHP will provide additional spaces which are needed for mobile homes in the area; and that availability of mobile home spaces provides an alternative housing opportunity for persons of moderate income, which is required in the public interest.

Englund subsequently filed an application for a writ of certiorari in superior court. The trial court affirmed the Council's decision and Englund now appeals.

## II

As an initial matter, Englund claims that the respondents have the burden on appeal of proving that the Council acted properly in granting the rezone application, citing *Parkridge v. Seattle*, 89 Wn.2d 454, 573 P.2d 359 (1978). Although there is some ambiguity in *Parkridge* concerning the burden of proof, we do not read the opinion as supporting the position Englund takes here. Rather, we understand the court to mean only that the burden of proof is on the rezone proponent at the *administrative* level. *Parkridge*, 89 Wn.2d at 462. Should the administrative body's decision be challenged, it is the appealing party's burden to show that the rezone decision was erroneous. As numerous cases have declared, and *Parkridge* itself states, we review the decision under the arbitrary and capricious standard. *Parkridge*, 89 Wn.2d at 459; *see also Belcher v. Kitsap Cy.*, 60 Wn. App. 949, 952, 808 P.2d 750 (1991); *Maranatha Mining, Inc. v. Pierce Cy.*, 59 Wn. App. 795, 804, 801 P.2d 985 (1990); *Murden Cove Preserv. Ass'n v. Kitsap Cy.*, 41 Wn. App. 515, 519, 704 P.2d 1242 (1985). Under this standard, we will not reverse the Council's determination that respondents have met the relevant rezone criteria unless that determination was made without consideration of and in disregard of the facts. *Maranatha Mining, Inc. v. Pierce Cy.*, 59 Wn. App. at 804.

## III

Turning then to the Council's decision, Englund first claims that the evidence does not support a finding that Cashmere Manor's property has been affected by changed conditions not contemplated in the last community plan or area zoning. KCC 20.24.190(D)(1). He argues that the last

area zoning of the subject property was the 1986 community plan and area zoning update. Because adoption of the RMHP zone had been in existence for 5 years before the 1986 update, he claims that the 1986 update cannot be characterized as an unanticipated circumstance.

The respondents argue that the last area zoning actually affecting the property was either the 1975 Federal Way Community Plan and Area Zoning, which first zoned the property SR, or the 1980 update, which retained the SR zoning. Thus, the creation of the RMHP zone in 1981, after these area zonings, affected Cashmere Manor's property in an unanticipated manner.

■ The critical issue here is whether the 1986 update constituted the "last previous area zoning . . . of the subject property" within the meaning of KCC 20.24.190(D)(1) or whether the last area zoning preceded the 1981 RMHP classification. We conclude it is the latter. There is no persuasive evidence that the 1986 update was directed at RMHP area zoning. By its own terms, the 1986 update focused only on issues relating to commercial, industrial, and multifamily land developments and policies. Although within the 1986 update a few zoning changes involving single-family residential uses were made, these changes for the most part involved either reallocation of single-family and multifamily uses in a mixed-use development, rezoning from single-family to multifamily, or zoning changes to protect the Hylebos wetland.

Englund finds support for his contention that the 1986 update did address the RMHP classification in the January 1986 denial of Ms. Celia Whitman's request to rezone a nearby parcel to RMHP. The denial, Englund claims, is evidence of the fact that the County considered and rejected mobile home park designations in adopting the 1986 update. We do not agree. In rejecting the Whitman application, the County was responding to a single application to rezone a specific property, not a request to consider areawide implementation of RMHP zoning. Moreover, the record demonstrates that the application was rejected out of hand because it failed to meet density and public facility requirements.

Thus, it appears the Council did not even reach the question whether RMHP zoning was appropriate.

Accordingly, we conclude that the 1986 update does not constitute the "last previous area zoning . . . of the subject property" within the meaning of KCC 20.24.190(D)(1). Whether the 1975 area zoning or the 1980 update was in fact the last zoning is immaterial. It is clear that in either case, the RMHP zone classification did not yet exist. Thus, the Council's finding that the 1981 adoption of the RMHP zone classification was an unanticipated change in circumstances is not arbitrary and capricious.

## IV

Englund next contends that there is insufficient evidence to support a finding that the adoption of the RMHP classification affected Cashmere Manor's property in a manner and to a degree different than other properties in the vicinity such that area rezoning is not appropriate. KCC 20.24-.190(D)(2). He argues that because the creation of RMHP zoning affects all property in King County, it could not affect Cashmere Manor's property in a unique manner.

Englund's argument, however, ignores the underlying purpose of ordinance 5318, which contemplates that RMHP zoning will be established through individual rezone requests. KCC 21.20A.010(A), (B), (C). Also the administrative record demonstrates the fact that the County viewed mobile home parks as an alternative type of single-family zoning, most easily established through the individual rezone process.[1] Thus, the Council's finding that adoption of the RMHP zone classification affected Cashmere Manor's property in a manner and to a degree different than other properties in the vicinity is neither arbitrary nor capricious.

---

[1] In his reply brief, Englund argues that the County has considered RMHP zoning during the community plan and area zoning process, citing the latest update to the SeaTac Community Plan and Area Zoning. However, the provision in the SeaTac update upon which he relies states that RMHP zoning was adopted "because of the existing mobile home park" on the property. This is different from the situation here, which concerns reclassification of property for construction of a *new* mobile home park.

Finally, although not directly challenged by Englund, the record also supports the Council's finding that the rezone would serve the public interest. KCC 20.24.190(D)(3). The hearing examiner's supplemental findings establish that the rezone would provide additional spaces needed for mobile homes and an alternative housing opportunity for persons of moderate income. These are legitimate public welfare considerations.

Accordingly, we affirm the Council's decision to grant Cashmere Manor's application.

GROSSE, C.J., and COLEMAN, J., concur.